# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RALPH W. MCCLAIN,** | : | **CIVIL NO. 1:12-CV-265** |
| | : | |
| **Plaintiff** | : | **(Judge Caldwell)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JAMES WALSH, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction

This inmate motion for a preliminary injunction contains an extraordinary prayer for relief. The plaintiff, Ralph McClain, who states that he wishes to be referred to as Capachino J. Capone**,** is a prisoner at the State Correctional Institution Dallas. McClain has filed a motion for preliminary injunction, (Doc. 14), which makes religious dietary demands, and requests that the court direct prison officials to provide him with hearty meals totaling "no less than 3,500 calories . . . per 24 hour period." (Id.) McClain also invites us to order prison officials to provide him with "reasonable accommodations for plaintiff to engage in sacred coital Royal Majestic rituals with plaintiff's Royal Majestic harem consorts, physically, spiritually and psychicly [sic]." (Id.) Finally, McClain seeks access to certain seized documents that he claims were removed from his cell, alleging that he needs these otherwise unspecified materials to assist him in litigation. (Id.)

For the reasons set forth below, it is recommended that this motion be denied.

**II**.    **Statement of Facts and of the Case**

On February 10, 2012, Ralph McClain filed a civil complaint naming his jailers at SCI Dallas as defendants and alleging that these prison officials were infringing his religious freedoms by denying him his prescribed religious diet, and otherwise improperly curtailing the exercise of his faith. (Doc. 1) In his complaint, McClain sought injunctive and declaratory relief as well as damages as a remedy for this alleged infringement upon his religious freedom. (Id.)

McClain has now filed a motion for preliminary injunction. (Doc. 14.) The relief sought in this motion, in turn, closely parallels the claims made by McClain in his complaint. Thus, McClain once again recites that prison officials are interfering with his religious practices and observances. In particular, McClain contends that prison official have ignored his religious dietary demands, which include a requirement that prison officials provide him "no less than 3,500 calories . . . per 24 hour period." (Id.) McClain also seeks an injunction requiring prison officials to provide him with "reasonable accommodations for plaintiff to engage in sacred coital Royal Majestic rituals with plaintiff's Royal Majestic harem consorts, physically, spiritually and psychicly [sic]." (Id.)  Finally, McClain demands the return of certain unidentified

confiscated documents that he alleges are needed by him in unspecified litigation.(Id.) The defendants have responded to this motion and it is, therefore, ripe for resolution.

For the reasons set forth below, it is recommended that the motion be denied.

### III. **Discussion**

### A. **Preliminary Injunction Rule 65– The Legal Standard.**

Inmate *pro se* pleadings, like those filed here, which seek extraordinary, or emergency relief, in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure and are judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained: "Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994) (quoting SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985)). See, also, Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 170-71 (3d Cir. 2001); Emile v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D. Pa. Sept. 24, 2006)(denying inmate preliminary injunction).

A preliminary injunction is not granted as a matter of right. <u>Kerschner v. Mazurkewicz</u>, 670 F.2d 440, 443 (3d Cir. 1982) (affirming denial of prisoner motion for preliminary injunction seeking greater access to legal materials). It is an extraordinary remedy. Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party. As a threshold matter, "it is a movant's burden to show that the 'preliminary injunction must be the only way of protecting the plaintiff from harm.' " <u>Emile</u>, 2006 WL 2773261, at * 6 (quoting <u>Campbell Soup Co. v. ConAgra, Inc.</u>, 977 F .2d 86, 91 (3d Cir.1992)). Thus, when considering such requests, courts are cautioned that:

> "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (emphasis deleted). Furthermore, the Court must recognize that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." <u>Plain Dealer Publishing Co. v. Cleveland Typographical Union # 53</u>, 520 F.2d 1220, 1230 (6th Cir.1975), <u>cert. denied</u>, 428 U.S. 909 (1977). As a corollary to the principle that preliminary injunctions should issue only in a clear and plain case, the Court of Appeals for the Third Circuit has observed that "upon an application for a preliminary injunction to doubt is to deny." <u>Madison Square Garden Corp. v. Braddock</u>, 90 F.2d 924, 927 (3d Cir.1937).

<u>Emile</u>, 2006 WL 2773261, at *6.

Accordingly, for an inmate to sustain his burden of proof that he is entitled to a preliminary injunction under Fed.R.Civ.P. 65, he must demonstrate both a reasonable

likelihood of success on the merits, and that he will be irreparably harmed if the requested relief is not granted. Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998); Kershner, 670 F.2d at 443. If the movant fails to carry this burden on either of these elements, the motion should be denied since a party seeking such relief must "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989)(emphasis in original), (quoting Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)).

These limitations on the power of courts to enter injunctions in a correctional context are further underscored by statute. Specifically, 18 U.S.C. § 3626 limits the authority of courts to enjoin the exercise of discretion by prison officials, and provides that:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

> 18 U.S.C.A. § 3626(a)(1)(A).

With respect to preliminary injunctions sought by inmates, courts are also instructed that:

Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief.

18 U.S.C.A. § 3626(a)(2).

Furthermore, several other basic legal tenets guide our discretion in this particular case, where an inmate: (1) seeks to enjoin a wide array of non-parties; and (2) requests relief which goes beyond merely preserving the *status quo* in this litigation, but seeks to impose new, mandatory conditions on prison officials. Each of these aspects of McClain's prayer for injunctive relief presents separate problems and concerns.

For example, McClain's proposed preliminary injunction would not simply apply to the named defendants in this lawsuit. It would also require a wide array of other prison officials to take affirmative steps to monitor McClain's daily caloric intake, and make suitable arrangements for McClain's "sacred coital Royal Majestic rituals with plaintiff's Royal Majestic harem consorts." An injunction against non-parties, like the injunction sought here, requires a specific legal showing. To the extent that McClain seeks to enjoin non-parties in this litigation it is clear that: "[a] non-party cannot be bound by the terms of an injunction unless the non-party is found to be

acting 'in active concert or participation' with the party against whom injunctive relief is sought. Fed.R.Civ.P. 65(d)." Elliott v. Kiesewetter, 98 F.3d 47, 56 (3d Cir. 1996).

Further, where the requested preliminary injunction "is directed not merely at preserving the *status quo* but . . . at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). Mandatory injunctions should be used sparingly. United States v. Price, 688 F.2d 204, 212 (3d Cir. 1982). Thus, a request for some form of mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518 (3d Cir. 1995).

In addition, to the extent that the plaintiff seeks a preliminary injunction with some enduring effect, he must show that he will be irreparably injured by the denial of this extraordinary relief. With respect to this benchmark standard for a preliminary injunction, in this context it is clear that:

> Irreparable injury is established by showing that Plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir.1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). Plaintiff bears this burden of showing irreparable injury. Hohe v. Casey, 868 F.2d 69, 72 (3d Cir.), cert. denied, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). In fact, the Plaintiff must show *immediate* irreparable injury, which is more

than merely serious or substantial harm. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987). The case law provides some assistance in determining that injury which is irreparable under this standard. "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." Dice v. Clinicorp, Inc., 887 F.Supp. 803, 809 (W.D. Pa.1995). An injunction is not issued "simply to eliminate the possibility of a remote future injury ..." Acierno, 40 F.3d at 655 (citation omitted).

Messner v. Bunner, C.A. No. 07-112, 2009 WL 1406986, at *4 (W.D. Pa. May 19, 2009).

Furthermore, it is well-settled that "[t]he purpose of a preliminary injunction is to preserve the *status quo*, not to decide the issues on their merits." Anderson v. Davila, 125 F.3d 148, 156 (3d Cir. 1997). Therefore, in a case such as this, where the inmate-"Plaintiff's request for immediate relief in his motion for preliminary injunction necessarily seeks resolution of one of the ultimate issues presented in [the] . . . Complaint, . . . [the] Plaintiff cannot demonstrate that he will suffer irreparable harm if he is not granted a preliminary injunction, because the ultimate issue presented will be decided either by this Court, upon consideration of Defendants' motion to dismiss, or at trial. As a result, Plaintiff's motion for preliminary injunction should be denied." Messner, 2009 WL 1406986, at *5.

In assessing a motion for preliminary injunction, the court must also consider the possible harm to other interested parties if the relief is granted. Kershner, 670 F.2d

at 443. Finally, a party who seeks an injunction must show that the issuance of the injunctive relief would not be adverse to the public interest. Emile, 2006 WL 2773261, at * 6 (citing Dominion Video Satellite, Inc. v. Echostar Corp., 269 F.3d 1149, 1154 (10th Cir. 2001)).

###    B.    McClain's Requests For Injunctive Relief Should Be Denied

Judged against these exacting standards, in its current form, McClain's motion for injunctive relief fails. At the outset, McClain cannot meet the first element for such injunctive relief since he cannot show a reasonable likelihood of success on the merits of his claims.

Turning first to McClain's demand that this court provide him with "reasonable accommodations for plaintiff to engage in sacred coital Royal Majestic rituals with plaintiff's Royal Majestic harem consorts, physically, spiritually and psychicly [sic]," we construe this as a request for contact visitation with a broad class of person described by McClain as "plaintiff's sacred and Majestic harem and/or earth bound celestial goddesses and/or priestessesque [sic] women with divine and/or saintly qualities." (Doc. 15, p.8.)  Construed in this fashion, we must note that it is well-settled that a "prohibition of contact visits is a reasonable response to legitimate concerns of prison security. An inmate is not precluded from visiting with members of his family and others, but only from physical contact with those individuals."

Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 759-60 (3d Cir. 1979). Thus, prison contact visitation restrictions have long been upheld by the courts as a constitutional response to valid security concerns. See, e.g., Dunn v. Castro, 621 F.3d 1196, 1203 n. 2 (9th Cir. 2010); Thorne v. Jones, 765 F.2d 1270, 1273-75 (5th Cir. 1985) (holding prisoner had no absolute right to visits from his parents); Harmon v. Auger, 768 F.2d 270, 272 (8th Cir. 1985) (holding that an inmate does not have a liberty interest in contact visits); Smith v. Coughlin, 748 F.2d 783, 788-89 (2d Cir.1984) (upholding prison regulation that prohibited contact visits from family); Bellamy v. Bradley, 729 F.2d 416, 420 (6th Cir.1984) (upholding the termination of family visits as a result of prison regulation violations); Ramos v. Lamm, 639 F.2d 559, 570 n. 26 (10th Cir.1980) ("[W]e think the weight of present authority clearly establishes that there is no constitutional right to contact visitation. We agree with this view." (internal citations omitted)). Therefore, this "coital" contact visitation entitlement claim fails on its merits.

As for McClain's religious diet claims, as a threshold matter two requirements must be met before particular beliefs, alleged to be religious in nature, are accorded protection under the First Amendment or RLUIPA. The beliefs at issue must be " (1) sincerely held, and (2) religious in nature, in the claimant's scheme of things. United States v. Seeger, 380 U.S. 163, 185 (1965); Callahan v. Woods, 658 F.2d 679 (9th Cir.1981). If either of these two requirements is not satisfied, the court need not reach

the question, often quite difficult in the penological setting, whether a legitimate and reasonably exercised state interest outweighs the proffered first amendment claim." Africa v. Com. of Pa., 662 F.2d 1025, 1029-30 (3d Cir.1981). See Gailbreath v. Covert, No. No. 10–228, 2011 WL 3475544 at *8 (W.D. Pa. July 20, 2011)(RLUIPA claim denied where plaintiff's request for a vegetarian diet was not religious in nature).

In Africa the court identified three criteria to determine whether the beliefs at issue were religious in nature. Under these criteria, a religion should: (1) address fundamental and ultimate questions having to do with deep and imponderable matters; (2) be comprehensive in nature, consisting of a belief system as opposed to an isolated teaching; and (3) be recognized by certain formal and external signs. (Id.) at 1032. Applying these benchmarks, self-serving, individualized beliefs which benefit particular members have been found not to be religious beliefs. See Johnson v. Pennsylvania Bureau of Corrections, 661 F.Supp. 425, 437 (W.D. Pa.1987) ("We find such beliefs [requirements of special diet and modesty] to be remarkably self-serving, especially in the prison context, and quite similar to the MOVE philosophy discussed and held not to be a religion in the Africa case.") "Thus, if a prisoner's request for a particular diet is *not* the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request, . . . . It is in this way that prisons are protected from random requests for special diets by inmates whose alleged

dietary restrictions are not the result of their religious convictions but rather their secular predilections." <u>DeHart v. Horn</u>, 227 F.3d 47, 52 (3d Cir. 2000).

Here, there is substantial question whether the plaintiff can show that his dietary demands, as stated, result from sincerely held religious convictions rather than secular predilections. In particular, McClain's demand for hearty meals totaling "no less than 3,500 calories . . . per 24 hour period," (Doc.14), casts doubts upon the religious nature of his dietary preferences. While many religions may prescribe dietary choices and practices for their adherents, McClain has identified no article of faith in any religion that mandates large portions for the faithful at mealtime. In short, McClain's caloric demands and insistence upon hearty meals strongly suggest that this dietary demand is driven by secular, rather than sacred, concerns. Therefore, to the extent that McClain seeks to cloak his caloric intake demands in the trappings of religion, he has not shown a substantial likelihood of success on the merits.

Nor can McClain demonstrate a likelihood of success on the merits of his property confiscation and access-to-the-courts claims. McClain faces an exacting burden in advancing these claims. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. <u>Bounds v. Smith</u>, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful"

access for those incarcerated, either through legal materials or the assistance of those trained in the law. (Id.) at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Carey, 518 U.S. 343 (1996). In Lewis, the Court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the Court observed:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense. . . . Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which Bounds relied, see id., at 821-825, 97 S.Ct., at 1494-1497. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. Id., at 832, 97 S.Ct., at 1500.

Lewis v. Casey, 518 U.S. 343, 351-52 (1996).

Thus, following Lewis courts have consistently recognized two guiding principles which animate access-to-court claims by prisoners. First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. See, e.g., Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Demeter v. Buskirk, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); Castro v. Chesney, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998). Moreover, consistent with the Supreme Court's express view that " 'we encourage local experimentation' in various methods of assuring access to the courts," Lewis v. Casey, 518 U.S. at 352, courts have long recognized that public officials can provide meaningful access to the courts through a wide variety of means.

In this case, McClain simply has not shown actual concrete prejudice to him in the litigation of a particular case, the essential prerequisite to a constitutional claim in this setting. Quite the contrary, the record affirmatively reveals that McClain has been an active, indeed a prolific litigator, who has filed numerous pleadings without any apparent delay or outside impediment. Since it appears that McClain has enjoyed full and untrammeled access to the courts, McClain cannot demonstrate a likelihood of success on this particular constitutional claim, a claim that lies at the heart of this motion for preliminary injunction.

McClain's prospects on this particular claim do not improve if it is cast as an unlawful search and seizure of items from his cell.  To the extent that the plaintiff is attempting to advance a Fourth Amendment claim in this prison setting, it is clear that this claim fails as a matter of law. While the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV, in order to give force to this guarantee, government officials are limited to conducting searches that are reasonable.  Delaware v. Prouse, 440 U.S. 648, 653-54 (1979); Florence v. Bd. of Chosen Freeholders of Burlington, 621 F.3d 296, 301 (3d Cir. 2010).  As the Third Circuit has explained:

> Reasonableness under the Fourth Amendment is a flexible standard, Bodine v. Warwick, 72 F.3d 393, 398 (3d Cir. 1995), "not capable of precise definition or mechanical application, Bell [v. Wolfish, 441 U.S. 520, 559 (1979)].  "In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."  Id.

Florence, 621 F.3d at 301.

In  Hudson v. Palmer, 468 U.S. 517, 529,(1984), and  Block v. Rutherford, 468 U.S. 576 (1984) the Supreme Court directly addressed this issue in a custodial setting and unequivocally foreclosed plaintiff's claims relating to the searches of his cell.  In Block and Hudson the Supreme Court flatly held that the search of a cell by prison

officials does not violate the Fourth Amendment. More recently, the United States

Court of Appeals for the Third Circuit has explained:

> The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells. Hudson v. Palmer, 468 U.S. 517, 529, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984). The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration. Id. at 527. Mindful that internal security is a chief concern in prisons, the Court recognized that it would be impossible to prevent the introduction of weapons, drugs and other contraband into the premises if prisoners maintained a right of privacy in their cells. Id. Therefore, "the Fourth Amendment has no applicability to a prison cell."

Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001).

On the basis of the foregoing, it is beyond argument that the plaintiff did not

enjoy a privacy right in his prison cell. For these reasons, plaintiff's Fourth Amendment

constitutional claims regarding the search of this cell are without any legal merit.

Moreover, inmate due process claims arising out of the confiscation of property are

judged against settled legal standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners may be accommodated to a prison's legitimate security needs. See Bell v. Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). [Therefore] "[A]n unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Pre-deprivation notice is not constitutionally required. See id.

<u>Monroe v. Beard</u>, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, there are two crucial component to any inmate due process claim in this setting: (1) the confiscation of property; *and* (2) an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy. McClain has not, and likely cannot, contend that he had no post-deprivation remedy since Department of Corrections rules provide for just such a remedy. Therefore, this claim would also likely fail on its merits.

Beyond this failure to demonstrate a likelihood of success on the merits of these various claims, McClain's motion for injunctive relief is wanting in several other respects. For example, the motion does not address the demanding standards prescribed by caselaw and statute for such injunctions, in that the plaintiff does not present a prayer for relief which is "narrowly drawn, extend[s] no further than necessary to correct the harm . . ., and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Quite the contrary, this prayer for relief is cast broadly and would invite the court to intervene in prison custody issues in a particularly inappropriate way by scheduling "coital rituals" and large meals for McClain.

In addition, McClain's proposed preliminary injunction would require a wide array of non-party prison officials to take affirmative steps to monitor McClain's daily caloric intake, and make suitable arrangements for McClain's "sacred coital Royal Majestic rituals with plaintiff's Royal Majestic harem consorts." However, McClain

has not made the threshold legal showing necessary to secure relief from non-parties. An injunction against non-parties, like the injunction sought here, requires a specific legal showing. To the extent that McClain seeks to enjoin non-parties in this litigation it is clear that: "[a] non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought. Fed.R.Civ.P. 65(d)." Elliott v. Kiesewetter, 98 F.3d 47, 56 (3d Cir. 1996). Since McClain has not shown an active concert of unlawful action by these non-parties, he may not enjoin them to provide him dining and coital services.

Moreover, while we do not in any way diminish McClain's complaints, we find that this inmate has not shown an immediate irreparable harm justifying a preliminary injunction. See e.g., Rivera v. Pennsylvania Dep't. Of Corrections, 346 F. App'x 749 (3d Cir. 2009)(denying inmate request for injunction); Rush v. Correctional Medical Services, Inc., 287 F. App'x 142 (3d Cir. 2008)(same). In this regard, when considering this benchmark standard for a preliminary injunction, it is clear that: "Irreparable injury is established by showing that Plaintiff will suffer harm that 'cannot be redressed by a legal or an equitable remedy following trial.' Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989) ('The preliminary injunction must be the only way of protecting the plaintiff from harm')." Messner, 2009 WL 1406986, at *4. In this context, the word irreparable has a specific meaning and connotes "that

which cannot be repaired, retrieved, put down again, [or] atoned for . . . . " <u>Acierno v.</u>
<u>New Castle County</u>, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Thus, an
injunction will not issue "simply to eliminate the possibility of a remote future injury
. . . " <u>Acierno</u>, 40 F.3d at 655 (citation omitted). Therefore, where an inmate-plaintiff
is alleging that damages may be an adequate remedy, a preliminary injunction is often
not appropriate since the inmate has not shown that he faces immediate, *irreparable*
harm. <u>Rivera v. Pennsylvania Dep't. Of Corrections</u>, 346 F. App'x 749 (3d Cir. 2009);
<u>Rush v. Correctional Medical Services, Inc</u>., 287 F. App'x 142 (3d Cir. 2008).

Furthermore, applying these legal standards in a case such as this, where the
inmate-"Plaintiff's request for immediate relief in his motion for preliminary injunction
necessarily seeks resolution of one of the ultimate issues presented in [the] . . .
Complaint, . . . [the] Plaintiff cannot demonstrate that he will suffer irreparable harm
if he is not granted a preliminary injunction, because the ultimate issue presented will
be decided either by this Court, upon consideration of Defendants' motion to dismiss,
or at trial. As a result, Plaintiff's motion for preliminary injunction should be denied."
<u>Messner</u>, 2009 WL 1406986, at *5. In this case, as we view it, much of the preliminary
injunctive relief sought by McClain directly relates to the merits of the ultimate issues
in this lawsuit. Since the ultimate issues in this lawsuit are inextricably intertwined
with the assertions in this motion for injunctive relief, a ruling on the motion might be

perceived as speaking in some way to the ultimate issues in this case. In such instances we should refrain from prematurely granting such relief.

Finally, we also note that granting this injunctive relief, which would effectively have the federal courts making *ad hoc*, and individual, decisions concerning the treatment of a single prisoner, could harm both the defendants' and the public's interest. In this prison context, the defendants' interests and the public's interest in penological order could be adversely effected if the court began dictating the treatment for the plaintiff, one inmate out of thousands in the state prison system. Therefore, consideration of "whether granting preliminary relief will result in even greater harm to the nonmoving party; and . . . whether granting the preliminary relief will be in the public interest," Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994), also weighs heavily against McClain in this case.

In sum, in this case McClain has not demonstrated a likelihood of success on the merits, and has not shown that he suffers an irreparable harm. Moreover, this motion is procedurally flawed, and granting this extraordinary relief could harm the public's interest and the interests of the opposing parties. Therefore, an assessment of the factors which govern issuance of such relief under Rule 65 of the Federal Rules of Civil Procedure weighs against McClain and compels us to recommend that the court deny this motion.

**IV. <u>Recommendation</u>**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion for a temporary restraining order pursuant to FRCP 65(b) (Doc. 14) be denied.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 28th day of September, 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge