# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RALPH W. MCCLAIN, | : | CIVIL NO. 1:12-CV-265 |
| | : | |
| **Plaintiff** | : | (Judge Caldwell) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| JAMES WALSH, et al., | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

The plaintiff in this action, Ralph McClain, is a state prisoner and a prolific litigant, who has acknowledged in his current complaint the filing of multiple lawsuits in federal courts throughout Pennsylvania. (Doc. 1.) McClain is also a plaintiff with a penchant for leaving litigation half done, as illustrated by the outcome of these prior lawsuits, which have frequently been dismissed for failure to prosecute or failure to comply with the court's directions.[1]

---

[1] The following is a summary of the reasons for dismissal in those cases: 10-7241 (E.D. Pa.)(dismissed because McClain did not agree to pay the filing fee in installments); 11-164 (W.D. Pa.)(dismissed for failure to prosecute); 11-177 (W.D. Pa.)(dismissed for failure to prosecute); 08-4637 (E.D. Pa.)(dismissed because McClain failed to affirm that he was willing to have the filing fee deducted from his prison account); 09-0922(E.D.Pa.)(dismissed because McClain failed to provide prisoner account statement); 09-0925 (E.D. Pa.)(dismissed because McClain failed to provide prisoner account statement); 09-4631 (3d Cir.) (summary affirming district court); 09-4632 (3d Cir.)(summary affirming district court).  McClain  also has had numerous cases dismissed because he did not file the proper in forma pauperis forms, See 09-691 (W.D. Pa.); 10-0032(W.D. Pa.);

For McClain, we now find that his past has become prologue since McClain has now left yet another lawsuit undone and has failed to comply with court orders directing him to prosecute his claims. As a result, we are compelled to recommend that McClain's current lawsuit suffer the same fate as the numerous prior lawsuits he has abandoned, dismissal of this action.

This civil rights action was brought by the plaintiff, a *pro se* litigant, through the filing of a complaint on February 10, 2012. (Doc. 1.) In his complaint, and an accompanying motion for preliminary injunction, (Doc. 14), McClain, who states that he wishes to be referred to as Capachino J. Capone**,** makes religious dietary demands, and requests that the court direct prison officials to provide him with hearty meals totaling "no less than 3,500 calories . . . per 24 hour period." (Id.) McClain also invites us to order prison officials to provide him with "reasonable accommodations for plaintiff to engage in sacred coital Royal Majestic rituals with plaintiff's Royal Majestic harem consorts, physically, spiritually and psychicly [sic]." (Id.) Finally, McClain seeks access to certain seized documents that he claims were removed from his cell, alleging that he needs these otherwise unspecified materials to assist him in litigation. (Id.)

11-1068 (W.D. Pa.); 11-1091 (W.D. Pa.); 11-230 (W.D. Pa.); 11-1289 (W.D. Pa.); and 11-1430 (W.D.Pa.); for failure to file an account statement, See 09-923 (E.D.Pa);  for failure to prosecute, See 10-132 (W.D.Pa.); 10-838 (W.D.Pa.); and for improper venue. See 09-6145 (E.D. Pa); 09-2700 (E.D.Pa.)

At the time that he filed this *pro se* complaint, McClain received a copy of this court's Standing Practice Order, an order which informed the plaintiff of his responsibility to reply to defense motions, and warned McClain in clear and precise terms of the consequences which would flow from a failure to comply with briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion. The motion may therefore be granted if: (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 4, p. 3.)

On April 23, 2012, the defendants filed a motion to dismiss this complaint and a brief. (Docs. 10 and 11.) On three occasions– June 27, 2012, July 17, 2012, and August 21, 2012– McClain then sought, and obtained, an extension of time in which to respond to this motion. (Docs. 17, 18, 20, 22, 25, 26.) Despite having received extensions of time totaling five months in which to respond to this motion, McClain has wholly neglected to file any response to this motion to dismiss, and the time for filing a response has now lapsed. Thus, the deadline for the plaintiff's motion response has now passed, and it appears that McClain has violated this court's Standing Practice Order by failing to respond to the motion. Since the motion response

deadline for this motion prescribed by the court has now passed without any action on the plaintiff's part, the motion is now deemed ripe for resolution.

For the reasons set forth below, it is recommended that the motion to dismiss should be granted.

## II.    Discussion

### A.    Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted.

At the outset, under the Local Rules of this court the plaintiff should be deemed to concur in the motion, since McClain has failed to timely oppose the motion, or otherwise litigate this case. These procedural defaults completely frustrate and impede efforts to resolve this matter in a timely and fair fashion, and under the rules of this court warrants dismissal of the action, since  Local Rule 7.6 of the rules of this court imposes an affirmative duty on the plaintiff to respond to  motions and  provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation,

shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (1991)." <u>Williams v. Lebanon Farms Disposal, Inc.</u>, No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug. 26, 2010). In this case McClain has not complied with the local rules, or this court's orders, by filing a timely response to this motion. On these facts, the plaintiff's procedural defaults compel the court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. <u>See</u> Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D. Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our

system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." (Id.) Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed comply with this court's orders, and has neglected to comply with Local Rule 7.6 by filing a timely response to a motion to dismiss filed by the defendants. These cumulative failures now compel us to apply the sanction called for under the local rules and deem the plaintiff to not oppose the motion to dismiss.

**B.    Dismissal of this Case Is Also Warranted Under Rule 41**.

Beyond the requirements imposed by the local rules of this court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That discretion, however, while broad, is governed by

certain factors, commonly referred to as <u>Poulis</u> factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. <u>Poulis v. State Farm Fire and Cas. Co.</u>, 747 F.2d 863, 868 (3d Cir.1984).

<u>Emerson</u>, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." <u>Lopez v. Cousins</u>, No. 10-1877, 2011 WL 2489897, *3 (3d Cir. June 23, 2011)(quoting <u>Briscoe v. Klem</u>, 538 F.3d 252 (3d Cir. 2008)) Therefore, "[i]n balancing the <u>Poulis</u> factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case. <u>Mindek v. Rigatti</u>, 964 F.2d 1369, 1373 (3d Cir.1992)." <u>Briscoe v. Klaus</u>, 538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>, 538 F.3d at 263. However, recognizing the broad discretion conferred upon

the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the Plaintiff, who has failed to abide by court orders and has neglected to litigate this case.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration. As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir. 1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly

irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir. 1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222. Oftentimes, this type of prejudice involves disputes between the parties on discovery matters because the defendants were deprived of necessary information or had to expend costs to obtain court orders for compliance. See, e.g., Poulis, 747 F.2d at 868 (finding that the defendants were prejudiced where the plaintiffs did not answer interrogatories, the defendants had to file a motion to compel the plaintiffs' answers, and the defendant had "to file its pre-trial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first"); Ware, 322 F.3d at 220-23 (affirming the District Court's conclusion that a defendant had been prejudiced where the plaintiff repeatedly ignored the defendant's discovery request for the plaintiff's computation of damages and did not provide it until one week prior to trial).

Briscoe v. Klaus, 538 F.3d at 259-60.

In this case, the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action. In such instances, dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third <u>Poulis</u> factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate. In this regard, while it is evident that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders.' <u>Adams,</u> 29 F.3d at 874; [it is also clear that] conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness.'" <u>Briscoe v. Klaus,</u> 538 F.3d at 260-61 (some citations omitted). Here, since filing his complaint, the plaintiff has failed to timely file pleadings, and has not complied with orders of the court. Moreover, the plaintiff's lack of diligence in this litigation is emblematic of his approach to multiple lawsuits in the past.[2] Thus, McClain's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-

_____

[2]See, for example the following: 10-7241 (E.D. Pa.)(dismissed because McClain did not agree to pay the filing fee in installments); 11-164 (W.D. Pa.)(dismissed for failure to prosecute); 11-177 (W.D. Pa.)(dismissed for failure to prosecute); 08-4637 (E.D. Pa.)(dismissed because McClain failed to affirm that he was willing to have the filing fee deducted from his prison account); 09-0922(E.D. Pa.)(dismissed because McClain failed to provide prisoner account statement); 09-0925 (E.D. Pa.)(dismissed because McClain failed to provide prisoner account statement); 09-4631 (3d Cir.) (summary affirming district court); 09-4632 (3d Cir.)(summary affirming district court).  McClain  also has had numerous cases dismissed because he did not file the proper in forma pauperis forms, See 09-691 (W.D. Pa.); 10-0032(W.D. Pa.); 11-1068 (W.D. Pa.); 11-1091 (W.D. Pa.); 11-230 (W.D.Pa.); 11-1289 (W.D.Pa.); and 11-1430 (W.D. Pa.); for failure to file an account statement, See 09-923 (E.D.Pa);  for failure to prosecute, See 10-132 (W.D.Pa.); 10-838 (W.D. Pa.); and for improper venue. See 09-6145 (E.D. Pa); 09-2700 (E.D. Pa.)

response . . . , or consistent tardiness in complying with court orders." <u>Adams,</u> 29 F.3d at 874.

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff. In this setting we must assess whether this inaction reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. <u>Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund</u>, 29 F.3d 863, 875 (3d Cir.1994). Here, we find that the plaintiff's actions were willful, and reflect a pattern of willfulness. At this juncture, when the plaintiff has a lengthy history of abandoning litigation, has failed in this case to comply with instructions of the court directing him to take specific actions in this lawsuit, and has violated court orders and the local rules, the court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders,  lesser sanctions may not be an effective alternative. <u>See, e.g., Briscoe v. Klaus,</u> 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson,</u> 296 F.3d at 191. This

case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the court.

Finally, under <u>Poulis</u> we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since McClain is now wholly non-compliant with his obligations as a litigant. The plaintiff cannot refuse to cooperate with this litigation, which would address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to dismiss. In any event, it is well-settled that " 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>, 538 F.3d at 263. Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot defeat this motion. More fundamentally, as discussed below, McClain's claims against many of these defendants fail on their merits, yet another factor which favors

dismissal of this action. The legal flaws inherent in many of these claims are discussed separately below.

### C.    __Many of McClain's Claims Fail On Their Merits__

The defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>  –U.S.–, 129 S.Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened

form of pleading, requiring a plaintiff to plead more than the possibility
of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." (Id. at 555.) "Factual allegations must be enough to raise a right to relief above the speculative level." (Id.) In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In

Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." (Id. at 679.) According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (Id. at 678.) Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then

determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'(Id.)" Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the

pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these standards, McClain's claims against many of the defendants in this action clearly fail. While cast as a lawsuit involving inmate religious freedoms, McClain's complaint and motion for injunctive relief plainly focus on matters of the flesh rather than spiritual concerns. Indeed, McClain's principal demands in this litigation relate to matters of sex and dining.

Turning first to McClain's demand that this court provide him with "reasonable accommodations for plaintiff to engage in sacred coital Royal Majestic rituals with plaintiff's Royal Majestic harem consorts, physically, spiritually and psychicly," we construe this as a request for contact visitation with a broad class of person described by McClain as "plaintiff's sacred and Majestic harem and/or earth bound celestial goddesses and/or priestessesque [sic] women with divine and/or saintly qualities." (Doc. 15, p. 8.) Construed in this fashion, we must note that it is well-settled that a "prohibition of contact visits is a reasonable response to legitimate concerns of prison

security. An inmate is not precluded from visiting with members of his family and others, but only from physical contact with those individuals." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 759-60 (3d Cir. 1979). Thus, prison contact visitation restrictions have long been upheld by the courts as a constitutional response to valid security concerns. See, e.g., Dunn v. Castro, 621 F.3d 1196, 1203 n. 2 (9th Cir. 2010); Thorne v. Jones, 765 F.2d 1270, 1273-75 (5th Cir. 1985) (holding prisoner had no absolute right to visits from his parents); Harmon v. Auger, 768 F.2d 270, 272 (8th Cir.1985) (holding that an inmate does not have a liberty interest in contact visits); Smith v. Coughlin, 748 F.2d 783, 788-89 (2d Cir.1984) (upholding prison regulation that prohibited contact visits from family); Bellamy v. Bradley, 729 F.2d 416, 420 (6th Cir.1984) (upholding the termination of family visits as a result of prison regulation violations); Ramos v. Lamm, 639 F.2d 559, 570 n. 26 (10th Cir. 1980) ("[W]e think the weight of present authority clearly establishes that there is no constitutional right to contact visitation. We agree with this view." (internal citations omitted)). Therefore, this "coital" contact visitation entitlement claim fails on its merits.

As for McClain's religious diet claims, as a threshold matter two requirements must be met before particular beliefs, alleged to be religious in nature, are accorded protection under the First Amendment or RLUIPA. The beliefs at issue must be " (1) sincerely held, and (2) religious in nature, in the claimant's scheme of things. United

States v. Seeger, 380 U.S. 163, 185 (1965); Callahan v. Woods, 658 F.2d 679 (9th Cir.1981). If either of these two requirements is not satisfied, the court need not reach the question, often quite difficult in the penological setting, whether a legitimate and reasonably exercised state interest outweighs the proffered first amendment claim." Africa v. Com. of Pa., 662 F.2d 1025, 1029-30 (3d Cir. 1981). see Gailbreath v. Covert, No. No. 10–228, 2011 WL 3475544 at *8 (W.D. Pa. July 20, 2011)(RLUIPA claim denied where plaintiff's request for a vegetarian diet was not religious in nature).

In Africa the court identified three criteria to determine whether the beliefs at issue were religious in nature. Under these criteria, a religion should: (1) address fundamental and ultimate questions having to do with deep and imponderable matters; (2) be comprehensive in nature, consisting of a belief system as opposed to an isolated teaching; and (3) be recognized by certain formal and external signs. (Id. at 1032.) Applying these benchmarks, self-serving, individualized beliefs which benefit particular members have been found not to be religious beliefs. See Johnson v. Pennsylvania Bureau of Corrections, 661 F.Supp. 425, 437 (W.D.Pa.1987) ("We find such beliefs [requirements of special diet and modesty] to be remarkably self-serving, especially in the prison context, and quite similar to the MOVE philosophy discussed and held not to be a religion in the Africa case.") "Thus, if a prisoner's request for a particular diet is not the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request, . . . . It is in this way that

prisons are protected from random requests for special diets by inmates whose alleged dietary restrictions are not the result of their religious convictions but rather their secular predilections." DeHart v. Horn, 227 F.3d 47, 52 (3d Cir. 2000).

Here, there is substantial question whether the plaintiff can show that his dietary demands, as stated, result from sincerely held religious convictions rather than secular predilections. In particular, McClain's demand for hearty meals totaling "no less than 3,500 calories . . . per 24 hour period," (Doc.14), casts doubts upon the religious nature of his dietary preferences. While many religions may prescribe dietary choices and practices for their adherents, McClain has identified no article of faith in any religion that mandates large portions for the faithful at mealtime. In short, McClain's caloric demands and insistence upon hearty meals strongly suggest that this dietary demand is driven by secular, rather than sacred, concerns. Therefore, to the extent that McClain seeks to cloak his caloric intake demands in the trappings of religion, his claims fail.

Nor can McClain succeed on the merits of his property confiscation and access-to-the-courts claims. McClain faces an exacting burden in advancing these claims. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied

when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Carey, 518 U.S. 343 (1996). In Lewis, the Court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the Court observed:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense. . . . Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which Bounds relied, see id., at 821-825, 97 S.Ct., at 1494-1497. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that

"we encourage local experimentation" in various methods of assuring access to the courts. Id., at 832, 97 S.Ct., at 1500.

Lewis v. Casey, 518 U.S. 343, 351-52 (1996).


Thus, following Lewis courts have consistently recognized two guiding principles which animate access-to-court claims by prisoners. First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. See, e.g., Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Demeter v. Buskirk, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); Castro v. Chesney, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998). Moreover, consistent with the Supreme Court's express view that " 'we encourage local experimentation' in various methods of assuring access to the courts," Lewis v. Casey, 518 U.S. at 352, courts have long recognized that public officials can provide meaningful access to the courts through a wide variety of means.

In this case, McClain simply has not shown actual concrete prejudice to him in the litigation of a particular case, the essential prerequisite to a constitutional claim in this setting. Quite the contrary, the record affirmatively reveals that McClain has been an active, indeed a prolific litigator, who has filed numerous pleadings without any apparent delay or outside impediment. Since it appears that McClain has enjoyed full and untrammeled access to the courts, this claim also fails.

McClain's prospects on this particular claim do not improve if this allegation is cast as an unlawful search and seizure of items from his cell. To the extent that the plaintiff is attempting to advance a Fourth Amendment claim in this prison setting, it is clear that this claim fails as a matter of law. While the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV, in order to give force to this guarantee, government officials are limited to conducting searches that are reasonable. Delaware v. Prouse, 440 U.S. 648, 653-54 (1979); Florence v. Bd. of Chosen Freeholders of Burlington, 621 F.3d 296, 301 (3d Cir. 2010). As the Third Circuit has explained:

> Reasonableness under the Fourth Amendment is a flexible standard, Bodine v. Warwick, 72 F.3d 393, 398 (3d Cir. 1995), "not capable of precise definition or mechanical application, Bell [v. Wolfish, 441 U.S. 520, 559 (1979)]. "In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Id.

Florence, 621 F.3d at 301.


In Hudson v. Palmer, 468 U.S. 517, 529,(1984), and Block v. Rutherford, 468 U.S. 576 (1984) the Supreme Court directly addressed this issue in a custodial setting and unequivocally foreclosed Plaintiff's claims relating to the searches of his cell. In Block and Hudson the Supreme Court flatly held that the search of a cell by prison

officials does not violate the Fourth Amendment. More recently, the United States

Court of Appeals for the Third Circuit has explained:

> The defendants correctly assert that prisoners do not have a Fourth
> Amendment right to privacy in their cells. Hudson v. Palmer, 468 U.S.
> 517, 529, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984). The Supreme Court
> has concluded that the Fourth Amendment right to privacy, to be free
> from unreasonable searches, is fundamentally inconsistent with
> incarceration. Id. at 527. Mindful that internal security is a chief
> concern in prisons, the Court recognized that it would be impossible to
> prevent the introduction of weapons, drugs and other contraband into the
> premises if prisoners maintained a right of privacy in their cells. Id.
> Therefore, "the Fourth Amendment has no applicability to a prison cell."

Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001).


On the basis of the foregoing, it is beyond argument that the plaintiff did not

enjoy a privacy right in his prison cell. For these reasons, plaintiff's Fourth

Amendment constitutional claims regarding the search of this cell are without any

legal merit. Moreover, inmate due process claims arising out of the confiscation of

property are judged against settled legal standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners may
> be accommodated to a prison's legitimate security needs. See Bell v.
> Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).
> [Therefore] "[A]n unauthorized intentional deprivation of property" by
> prison officials does not violate the Due Process Clause "if a meaningful
> postdeprivation remedy for the loss is available." Hudson v. Palmer, 468
> U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing Parratt v.

*Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Pre-deprivation notice is not constitutionally required. See id.

Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, there are two crucial component to any inmate due process claim in this setting: (1) the confiscation of property; *and* (2) an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy. McClain has not, and likely cannot, contend that he had no post-deprivation remedy since Department of Corrections rules provide for just such a remedy. Therefore, this claim would also fail on its merits.

Thus, an analysis this final Poulis factor–the meritoriousness of the plaintiff's claims–reveals that many of the plaintiff's assertions against the defendants in this complaint fail to allege a colorable claim under the Constitution. Given the legal bankruptcy of these claims, we find that all of the Poulis factors call for dismissal of this case.

Having concluded that this *pro se* complaint is flawed in multiple and profound ways, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result

in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the current complaint fails to state a viable civil rights cause of action, the factual and legal grounds proffered in support of this complaint make it clear that he has no right to relief, and the plaintiff has declined to respond to court orders, or otherwise litigate these claims. On these facts, we conclude that granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Therefore it is recommended that the complaint be dismissed as to all defendants without further leave to amend.

### III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants' Motion to Dismiss (Doc. 10) be GRANTED and the plaintiff's complaint be dismissed as to all defendants without further leave to amend.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 12th day of October, 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge